McLean v. Thomas.

John J. McLean, Samuel D. Thomas, Henry M. Thomas, Elizabeth J. Eads, Executors, etc., of the Last Will and Testament of Samuel R. Thomas, Deceased, v. Elizabeth Thomas.

1. WIDOW'S ALLOWANCE—*What is a Generous and Suitable Maintenance.*—A testator in disposing of his property, provided by his will that the remainder of his residuary estate, consisting of capital stock in national banks, should be held in trust by trustees, and out of the proceeds they should pay to his wife a generous and suitable maintenance and support, such as might be mutually agreed upon by said wife and trustees, taking into consideration the value of his estate and the fact that she had greatly contributed in accumulating said estate. And in case the wife and trustees should be unable to agree upon the amount, then they should pay such amount as might be ordered by the Circuit Court of said county. Not being able to agree, the widow applied to the Circuit Court and an order was made requiring the trustees to pay her the sum of $1,700 per annum for her maintenance and support. It appeared that the estate was worth about $150,000 and that the stocks of the banks amounted to $19,500. *It was held,* that the amount allowed was fully warranted by the evidence.

2. JURISDICTION—*In Chancery, Confined to the Purposes of the Bill.*—Under a bill in chancery, filed by a widow to enforce the provisions of a will, praying that defendants may be required by the order of the court to pay to her the income or dividends upon bank stock, and also one-third of the rental value of lands, the court has no jurisdiction to determine the question of homestead or dower in the testator's estate or whether the widow has taken and converted to her own use moneys and property belonging to said estate.

3. SOLICITOR'S FEES—*As Costs, When Proper.*—Where a widow files a bill in pursuance of a provision of a will to fix her allowance out of the estate of her husband and which is resisted by the trustees of the estate, the allowance of her solicitor's fees as costs is proper.

Memorandum.—Bill to enforce provisions of a will. Appeal from the Circuit Court of Montgomery County; the Hon. JACOB FOUKE, Judge, presiding. Heard in this court at the May term, 1893, and affirmed. Opinion filed November 4, 1893.

The opinion states the case.

GEORGE L. ZINK and JAMES M. TRUITT, attorneys for appellants.

AMOS MILLER, attorney for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE
COURT.

Samuel R. Thomas died October 3, 1890, seized and pos-
sessed of an estate estimated at about $150,000, consisting
of 2,320 acres of land and $45,000 in personal property,
including $19,500 in bank stock.   His will was admitted to
probate on the 8th, and letters testamentary were issued
to appellants on the 23d of the same month.   Besides his
widow, the appellee, he left surviving him several sons and
daughters, and a grandson, the child of a deceased daughter.
The dwelling house he occupied as a homestead is worth
four or five thousand dollars.   Appellee has continued to
occupy it since his death, and about forty-five acres of past-
ure land in connection with it.

By his will he devised all his land in parcels to his several
heirs, respectively, for their natural lives, with remainder
to their children, and also disposed of his personal property.
The provision thereby made for his wife is as follows:

" The residue and remainder of my said residuary estate,
consisting, as above stated, of capital stock in the Hillsboro
National Bank and the First National Bank of Litchfield,
Illinois, my said trustees shall continue to hold in trust, and
out of the proceeds of said trust fund, using for that pur-
pose the interest or dividends derived therefrom, pay to my
beloved wife, Elizabeth M. Thomas, in at least quarterly
payments, and oftener if necessary, the first payment to be
made not longer than ninety days after my death, a gener-
ous and suitable maintenance and support, such as may be
mutually agreed upon by my said wife and trustees, taking
into consideration the value of my estate and the fact that
she has greatly contributed in accumulating said estate.
And in case my wife and trustees are unable to mutually
agree upon the amount which they shall pay her for her
maintenance and support, then they shall pay her such
amount as may be ordered to be paid to her by the Circuit
Court of said county, as hereinafter provided.   It being my
will and intention that my said wife shall receive a generous
and suitable maintenance and support out of my estate for

and during the term of her natural life. The remainder, if any there be, of said interest or dividends derived from said bank stock after payments to my beloved wife as aforesaid, shall be held in trust by said trustees during the life of my said wife, and be invested and reinvested in this State or elsewhere, in real estate, stocks, bonds, notes, mortgages or otherwise, and at the best rate of interest, or so as to secure the largest and safest income, as in their interest (opinion) may best promote my estate and increase the value of said trust.  *  *  *  It is my will that my dear wife shall not be required or compelled to accept the provisions of this will in lieu of any interest which the law casts or confers upon her in any of my real estate which I have set off to my said sons and daughters, respectively, and have conveyed to my said trustees for the use and benefit of my said grandson, as I intend and so will that her rights and interests in all of the real estate aforesaid shall remain wholly undisturbed and unquestioned during the term of her natural life; but I trust that there will never be any occasion for her to assert her rights in regard to said lands, and hope that she will be liberally supported and maintained without recourse on said lands.   And in case said trust fund shall, from any cause at any time, prove inadequate and insufficient to provide her with such generous, ample and liberal maintenance and support as is intended by me, then it is my will, and I so direct, that she shall have a first, paramount and subsisting lien on all of said real estate, and the rents, issues and profits thereof, which I have set off to my said sons and daughters, respectively, for the terms of their natural lives, respectively, as aforesaid, and which I have conveyed to my said trustees for the use of my grandson, as aforesaid, to secure to her such maintenance and support during the term of her natural life, which lien may, whenever the circumstances demand it, be duly enforced by my dear wife taking and receiving so much of the rents, issues and profits of said lands as may be necessary to provide her with such maintenance and support.   By accepting the provisions of this will, my dear wife shall release her dower in any other lands than those

above described and mentioned, which I may own at the time of my death."

To this he added the following direction : "And for the better protection of my dear wife I do hereby further order and direct that if any difference should arise between my dear wife and my said trustees or their successors in trust as to the amount which shall be paid to her for her maintenance and support and the times of payment, that it shall be the privilege of my said wife and the duty of my said trustees to make application to the Circuit Court of said county (the opposite party being duly notified of such application being made) to adjust such differences and determine the amount which she shall receive out of my estate for her maintenance and support and when the same shall be made. And it is my will that any such order may on like application by either party from time to time, as the changing circumstances may require, be modified, altered or set aside, and the amount ordered to be paid increased or diminished as to the court may appear just and right."

Appellee filed the bill herein, setting forth the death of the testator, her relation to him, the character and value of his estate, the provisions of his will, its admission to probate and the acceptance by appellants of the trust it imposed, and alleging that the differences contemplated by this direction had arisen; that the defendants had made but one payment to her, of about $900, and upon various pretexts, of which the only one stated is that they could not agree with her upon the amount to be paid, had refused to pay any further sums. It also stated that she had an estate of homestead and dower interest in the lands disposed of by the will, the rental value of which is four dollars per acre, and that it is therein provided that the interest or dividends derived from the bank stock mentioned should be paid to her. But all the relief prayed is "that defendants may be required by the order of the court to pay to her the income or dividends upon the bank stock immediately after the same shall be declared and is payable by the banks, and also one-third of the rental value of said lands in quarterly installments."

The answer denies that complainant has an absolute and unqualified estate of homestead and dower interest in said lands or the right to receive all the dividends upon said bank stock, and some other averments of the bill which we think immaterial, but admits the will as alleged and avers that defendants have been at all times and are now ready and willing to carry out all its provisions relating to complainant, but have been unable to do so because of the difference of opinion between her and them as to her rights under said will. It admits that they have paid her only about $900, but avers that they would pay her more if it were necessary for her maintenance and support and she would receive it, and that at one time they offered to pay her the further sum of $300, which she refused to accept unless all the dividends then collected on the bank stock were paid to her. And it charges that she has received and appropriated to her own use a considerable amount of money and personal property of the estate specified for which she ought to account before claiming further payments.

A replication was filed, a reference to the master ordered, proofs taken and reported, and a form of decree entered, which finds that the testator died October 3, 1890; that his will was probated; that appellee is his widow, and that appellants are executors of said will; that appellee was to be paid a generous and liberal maintenance and support; that in case appellants and appellee could not mutually agree upon the amounts to be paid, then it was appellee's privilege and appellants' duty to make application to the Circuit Court to adjust amount, and that there is a difference between them as to such amount; that the value of the testator's estate is about $150,000; that appellee is now and has been since the testator's death in possession of the testator's late homestead, together with the buildings and about forty-five acres of land, and has received the rents, issues and profits thereof, and that the annual rental value of said homestead is $300.

The court ordered that appellants, as such executors, shall pay to appellee during the time she has occupied and shall

continue to occupy the dwelling house, buildings and forty-five acres of land, the sum of $1,700 per annum for her maintenance and support, and that appellants shall be credited with any payment or payments which they may have heretofore made to appellee for her maintenance and support under said will, said allowance to commence October 3, 1890. For the year 1893 and thereafterward said sum of $1,700 shall be paid in semi-annual payments of $850, on the 3d day of January and July in each year. If the appellee shall abandon or surrender up the possession of said dwelling house, buildings and forty-five acres of land, and cease to occupy the same, appellants shall from the time such possession shall be delivered up pay to appellee $2,000 in semi-annual installments of $1,000, at the dates aforesaid.

The court further orders that a solicitor's fee of $250 be paid by appellants out of said estate to Amos Miller, appellee's solicitor.

The court holds that it has no jurisdiction to determine whether or not appellee has homestead or dower in the testator's estate or whether or not appellee has taken and converted to her own use moneys and property belonging to said estate, or to determine the amount of money, if any, which appellants have paid appellee for her maintenance and support, and therefore declines to hear and determine said matters.

From this decree the defendants appealed.

We think the assignment for error that the court below refused to decree that appellee did not have a homestead and dower interest in the lands, and to settle the account charged in the answer for money and personal property of the estate received and appropriated by her, involves the controlling question in the case, namely, the extent to which it could properly inquire and act under the pleadings.

There is no claim that it could have set off a homestead or assigned dower, even if her claim of right thereto had been admitted by the answer. The bill did not seek it. The proper parties were not before the court. It certainly was not a bill for an accounting, and there was no cross-bill.

Counsel for appellants also concede that it did not ask for any construction of the will, and say that none was necessary. That proposition has our full concurrence.

As we understand it the object was simply and solely to get an impediment to the execution of a direct and express trust removed and a decree thereupon for its execution. Complainant was the *cestui que trust* and defendants the trustees. The trust is stated in the bill and created by the will of her deceased husband therein set forth. As thus shown it is simply to pay to her out of a certain fund, for her support and maintenance, certain sums and at certain times, to be determined by their mutual agreement, or, in case of their inability to agree, by the Circuit Court of Montgomery County. It is thus further shown that the amount to be so paid was to be sufficient for her liberal and generous support, considering the value of his estate and the fact that she had greatly contributed toward its accumulation, and that the questions of amount and times of payment were to be determined and the first payment made not longer than ninety days after his death. The bill is filed against them not in their general character or with reference to their other powers as executors of said will, but only as trustees of the particular fund and for the particular purpose in that behalf therein stated. The fund consisted of $19,500, invested in the stock of two certain banks. The amount of dividends thereon is not stated.

It is averred that the parties have been and are unable to agree upon the amount to be paid to her and the times of payment, by reason whereof the trust is not executed, and can not be until that impediment is removed by the adjustment, by the court, of the differences between them and its determination of those questions. according to the will creating the trust, in such case made and provided.

It is not charged, nor was it necessary to charge, that in differing from her upon the questions stated, the defendants acted fraudulently, dishonestly, or without right on their part so to do, but only that they have in fact differed, and that by reason thereof complainant, except to the extent of $900,

has failed and is failing to receive the benefit of the trust so created in her favor and to which she is in equity entitled.

The emergency and condition upon which, according to the terms of the instrument creating the trust, the court was to intervene and determine those questions, are thus alleged to have happened; and the prayer, in substance, is that the court do intervene and determine them, and thereupon order that the defendants pay her accordingly. This, in our opinion, is all that is essential or material in the bill. The statement of her interest in the land, as well as in the trust fund, as complainant understands it, and the prayer that upon that basis her allowance may be fixed, do not change the questions or the case for the consideration of the court. She did not ask for a homestead, or dower, or for rent, as rent, but for money for her maintenance and support, to be paid in amounts and at times to be determined by the court; and that was to be the extent and limit of the court's determination, as fixed by the trust.

The answer admits all the material averments of the bill, their character, and capacity of defendants as trustees, the terms of the trust, the failure of its execution and the reason thereof, and the right of complainant as *cestui que trust* to an allowance out of the trust fund, of money for her maintenance and support in the style indicated, to be paid to her by them in amounts and at times to be determined as alleged in the bill. Their denial of her claim of homestead and dower in the lands and of right to all the dividends on the bank stock which constitutes the trust fund forms no issue in the case made by the bill. Their consideration is unnecessary for any purpose contemplated by it. That purpose was simply to ascertain and fix the amount of money to be allowed for her support and the times of payment.

In so doing the court was expressly directed by the terms of the trust to take into consideration the value of the testator's estate and her meritorious agency in its acquisition, and his declared intention that the allowance should be amply generous, and liberal for the purpose indicated. It was necessary to consider her age, health, social position,

McLean v. Thomas.

habits and tastes, and the probable effect of the change in her mode of living in consequence of her being then a widow and living alone. The court had all the information on these points that the parties saw fit to furnish. It was also proper to consider the fact that ever since the death of her husband she had been and then was occupying their homestead without charge for rent, because from such occupancy she had been and then was deriving some means of support and would, of course require so much less for her allowance out of the trust fund for that purpose while she so occupied it. But we fail to perceive how its determination could be affected by the question of her claim of right to homestead and dower and all the dividends upon the bank stock, unless she was actually receiving, under such claim, some such means. Under the circumstances, and since she was not receiving any thereunder, we think the court rightly refused to consider questions that may or may not hereafter arise between her and the devisees upon such claim. Should she succeed in any attempt to enforce it and so acquire additional means of support, the changed conditions can be fully met by an application for a change in the order of allowance out of the trust fund.

We are of opinion that the amount allowed was fully warranted by the evidence, and that the solicitor's fee might well be regarded as a part of such allowance and made under the will, rather than in the light of any technical rule of law. The court intended that the amount to be paid to her was not to be diminished by expenses already incurred to procure its determination. But appellants were alike active in procuring it. All the parties were seeking it, and it was for the benefit of all alike. The necessity for it arose under the provisions of the will, without any wrong on either side. The testator might have prevented it and the case bears some analogy to one brought for construction of a will. In such case the expenses, including solicitor's fees, are generally borne by the estate. Missionary Society v. Mead, 131 Ill. 375. Perceiving no substantial error in the record, the decree will be affirmed.